UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS BRYANT,

                              Plaintiff,

                v.

MICHAEL CAPRA, *Superintendent*; MS.
HICKSON,

                              Defendants.

No. 18-CV-10198 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Thomas Bryant
Ossining, NY
*Pro Se Plaintiff*

Jonathan James Wilson, Esq.
Maria Barous Hartofilis, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Thomas Bryant ("Plaintiff"), currently an inmate at Sing Sing Correctional Facility

("Sing Sing"), brings this pro se Action, pursuant to 42 U.S.C. § 1983 and the Religious Land

Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq.*, against

Michael Capra ("Capra") and Ms. Hickson ("Hickson") (collectively, "Defendants"), alleging

that Defendants violated Plaintiff's constitutional rights when they purportedly mandated that

Plaintiff must tie back his dreadlocks in order to participate in recreational activities in the prison

yard.  (*See* Second Am. Compl. ("SAC") (Dkt. No. 33-1).)  Before the Court is Defendants'

Motion To Dismiss (the "Motion") the SAC.  (*See* Not. of Mot. (Dkt. No. 35).)  For the reasons that follow, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's SAC and the exhibits attached therein and are assumed true for purposes of resolving the instant Motion.[1]

At all relevant times, Plaintiff was incarcerated at Sing Sing.  (SAC ¶ 1.)  Plaintiff claims not to believe in God and not to "participate in the practices of religion that propagate this ideology."  (*Id*. ¶ 14.)  Plaintiff also alleges to have floor-length dreadlocks that he has been growing for approximately 25 years.  (*Id*. ¶ 13.)

On July 13, 2018, while Plaintiff was playing basketball at Sing Sing, Hickson approached him and told him that he could not "have his hair up with nothing securing it unless it was with a religious hair covering."  (*Id*. ¶ 15.)  Plaintiff interpreted this to mean that he needed to take his hair "out of the wrapped style (atop his head) he had it in without a religious covering on it."  (*Id*.)  Plaintiff claims that this was inconsistent with a directive issued by the New York Department of Corrections and Community Supervision ("DOCCS"), Directive 4914,

---

[1] Plaintiff filed an Amended Complaint on September 12, 2018, (*see* Am. Compl. (Dkt. No. 12)), but, in response to Defendants' Motion To Dismiss the Amended Complaint, (*see* Dkt. No. 30), Plaintiff proceeded to file the SAC, (*see* Leave to Amend (Dkt. No. 33)).  In the Leave to Amend, Plaintiff notes that he sought to "correct/[a]mend" the Amended Complaint by filing the SAC.  (*Id*. at ECF 2.)  Accordingly, the Court concludes that the SAC is the operative one, that it replaced the Amended Complaint, and that the previous Motion To Dismiss the Amended Complaint is moot.  *See Pagan v. N.Y. State Div. of Parole*, No. 98-CV-5840, 2002 WL 398682, at *4 (S.D.N.Y. Mar. 13, 2002) (noting that, although a pro se plaintiff "may [sometimes] not fully understand the superseding effect of [a] second pleading," where, as here, the plaintiff "expressly notes" when submitting an amended complaint that they seek to replace the previous pleading, the court may consider the amended pleading the operative one and address only the claims therein (citation and quotation marks omitted)).

because, according to Plaintiff, nothing in that directive obligates Plaintiff to bind his dreadlocks with a religious hair covering.  (*Id.* ¶ 16.)

Plaintiff alleges that because he was unable to secure his dreadlocks without using "religious means," he "ha[d] no opportunity to protect his hair . . . while being active in the yard," resulting in his hair being exposed to "filth, dirt, sweat, blood; being stepped on, or being tangled up with people" during recreational activity.  (*Id.* ¶¶ 17–18.)  According to Plaintiff, he has not been to the yard since receiving Hickson's instructions, as he is allegedly unable to both exercise his "non-religious" beliefs by not wearing religious protective gear and to physically participate in recreational activity without damaging his dreads.  (*Id.* ¶ 19.)

Plaintiff alleges that he filed a grievance regarding Hickson's instruction, which was denied by the Inmate Grievance Review Committee ("IGRC").  (*Id.* ¶ 20.)  Plaintiff then appealed that grievance to Capra, the Superintendent of Sing Sing, who "[a]ccepted in part" Plaintiff's grievance.  (SAC Ex. B ("Grievances") 17 (Dkt. No. 33-1).)[2]  Capra's decision recites the facts underlying Plaintiff's grievance and states, "In accordance with directive #4914 . . . inmates wearing below shoulder length dreadlocks must tie them back in a ponytail with[ a] barrette, rubber band, or other fastening device approved by the Superintendent.  Grievant advised it is in his best interest to speak to an area supervisor who is in the best position to address immediate concerns."  (*Id.*)  Plaintiff claims he appealed Capra's decision, but never received a ruling from the final decisionmaker in the inmate grievance process, the Central Office Review Committee ("CORC").  (SAC ¶ 23.)

---

[2] To avoid confusion, citations to the exhibits attached to the SAC are referenced by the ECF page number, stamped on the upper right-hand corner of each page.

According to Plaintiff, he has a history of behavioral issues and illnesses, such as anti-social personality disorder, intermittent explosive disorder, and "impulsivity."  (*Id.* ¶ 24.)  Plaintiff alleges that engaging in recreation and physical exercise is an important way for him to develop better social skills, focus on work, and avoid engaging in behavioral outbursts.  (*Id.* ¶¶ 25–27.)  Plaintiff claims that Hickson and Capra's decisions have prevented him from engaging in the regular recreational activity he used to enjoy, resulting in deteriorating muscle and joint health, as well as depression, anxiety, "impulsivity," and suicidal or other harmful thoughts.  (*Id.* ¶ 28.)

Based on the foregoing allegations, Plaintiff claims violations of his First and Eigth Amendment and Equal Protection Clause rights under 42 U.S.C. § 1983 and violations of his rights under RLUIPA.  (*Id.* ¶¶ 30–34.)  Plaintiff seeks both damages and injunctive relief.  (*Id.* at 8–9.)

### B.  Procedural History

Plaintiff initiated this Action on April 23, 2018 by filing a Complaint in the Northern District of New York.  (*See* Compl. (Dkt. No. 1).)  Plaintiff filed an Amended Complaint on September 12, 2018.  (*See* Am. Compl.)  Pursuant to a Decision & Order issued by a court in the Northern District on October 25, 2018, Plaintiff's claims as to Defendants were severed and transferred to this District.  (*See* Decision & Order 17 (Dkt. No. 13).)

Following transfer of the relevant claims to this District, on November 8, 2018, the Court issued an Order of Service.  (Dkt. No. 16.)  Defendants initially filed a Motion To Dismiss the Amended Complaint on April 4, 2019, (*see* Dkt. No. 30), pursuant to a briefing schedule set by the Court, (*see* Dkt. No. 27).  Subsequently, Plaintiff filed a request to amend the Amended Complaint and the SAC.  (*See* Leave to Amend; SAC.)  The Court ordered Defendants to

respond to the SAC.  (Dkt. No. 34.)  Defendants responded on May 6, 2019 by filing the instant

Motion.  (*See* Not. of Mot.; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 36).)

Plaintiff filed opposition papers on May 14, 2019.  (*See* Pl.'s Mem. in Opp'n to Mot. ("Pl.'s

Mem.") (Dkt. No. 39).)  Defendants filed a Reply on June 3, 2019.  (*See* Defs.' Reply Mem. in

Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 43).)  Plaintiff filed a Sur-Reply on June 18,

2019.  (*See* Pl.'s Reply Mem. in Opp'n to Mot. ("Pl.'s Reply Mem.") (Dkt. No. 45).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B.  Analysis

Defendants argue that Plaintiff failed to exhaust administrative remedies, (Defs.' Mem. 6); that Plaintiff failed to plausibly allege the personal involvement of either Defendant, (*id*. at 8); that Plaintiff failed to plausibly allege any claims under the First or Eighth Amendments, (*id*. at 10, 16); that Plaintiff's Equal Protection claim should be dismissed as duplicative of the First Amendment claims and that, regardless, the Equal Protection claim was not plausibly alleged, (*id*. at 14); that Plaintiff's RLUIPA claim is invalid, (*id*. at 16); that the Eleventh Amendment bars Plaintiff's claim for damages against individual Defendants, (*id*. at 19); and that, in any event, Defendants are entitled to qualified immunity for their alleged actions, (*id*. at 20).

1.  RLUIPA Claims

Plaintiff claims that Defendants' actions violated his rights under the RLUIPA. (SAC ¶ 30.) Defendants are correct that "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Lombardo v. Freebern*, No. 16-CV-7146, 2018 WL 1627274, at *15 (S.D.N.Y. Mar. 30, 2018) (quotation marks omitted) (quoting *Holland v. Goord*, 758 F. 3d 215, 224 (2d Cir. 2014)). However, plaintiffs may seek injunctive relief under this statute. *See id.*; *see also Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 520 (S.D.N.Y. 2010) ("It is readily apparent that injunctive relief constitutes

appropriate relief under RLUIPA." (citation and quotation marks omitted)), *aff'd*, 694 F.3d 208 (2d Cir. 2012).  Therefore, Plaintiff's claim for monetary damages is invalid under RLUIPA, and is dismissed with prejudice.  *See Lombardo*, 2018 WL 1627274, at *15 (dismissing RLUIPA claims for monetary damages but not for injunctive relief); *Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *7 (S.D.N.Y. Feb. 2, 2017) (same).[3, 4]

## 2.  First Amendment Free Exercise Claim

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  A prisoner's free exercise rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system."  *Id*. (citation and quotation marks omitted).  Accordingly, a prisoner's free exercise claims are "judged under a 'reasonableness' test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights."  *Id.* (citation and some quotation marks omitted).  To state a free exercise claim, an inmate "must make a threshold showing that 'the disputed conduct substantially burdened his sincerely held religious beliefs.'"  *Washington v. Chaboty*, No. 09-CV-

---

[3] To the extent Plaintiff also seeks injunctive relief under RLUIPA, that analysis overlaps with the question of whether Plaintiff suffered a substantial burden on his right to freely exercise his religion, *see Ramsey v. Goord*, 661 F. Supp. 2d 370, 395 n.12 (W.D.N.Y. 2009) (explaining that "the threshold inquiry of a religious freedom claim under both the First Amendment and . . . RLUIPA is the same"), and is subsumed within the Court's disposition of Plaintiff's First Amendment claims on their merits below.

[4] Furthermore, to the extent Plaintiff seeks damages against Defendants in their official capacities, such claims are barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985) (explaining that the Eleventh Amendment bars a damages action against state officials sued in their official capacity); *Drayton v. Young*, No. 17-CV-5440, 2018 WL 5831324, at *1 n.1 (S.D.N.Y. Nov. 7, 2018) (same).

9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alterations omitted) (quoting

*Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013)); *see also Salahuddin v. Goord*, 467

F.3d 263, 274–75 (2d Cir. 2006) (same). To show a belief is "sincere," the inmate "need only

demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of

things, religious." *Ford*, 352 F.3d at 588 (citations, alterations, and quotation marks omitted).

To show a "substantial burden," the inmate must show that "the state [has] put[] substantial

pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No.

13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (citations and quotation marks

omitted). That is, "[t]he relevant question in determining whether [the inmate's] religious beliefs

were substantially burdened is whether participation in the [religious activity], in particular, is

considered central or important to [the inmate's religious] practice." *Ford*, 352 F.3d at 593–94.

"Once [an inmate] establishes this burden, '[t]he defendants then bear the relatively limited

burden of identifying the legitimate penological interests that justify the impinging

conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19,

2012) (quoting *Salahuddin*, 467 F.3d at 275). The burden then shifts back to the inmate "to show

that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (citation, alteration,

and quotation marks omitted).

      RLUIPA, in turn, "protects institutionalized persons who are unable freely to attend to

their religious needs and are therefore dependent on the government's permission and

accommodation for exercise of their religion," *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005),

and "provides a more stringent standard than does the First Amendment, barring the government

from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or

regulation furthers a compelling governmental interest and is the least restrictive means of

furthering that interest," *Holland*, 758 F.3d at 224 (citation, alterations, and quotation marks omitted); *see also Salahuddin*, 467 F.3d at 273 (same) (citing 42 U.S.C. § 2000cc–1(a))). While "RLUIPA does not define 'substantial burden,' . . . the Second Circuit has assumed that '[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence[,] . . . Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it." *Panayoty v. Annucci*, 898 F. Supp. 2d 469, 481–82 (N.D.N.Y. 2012) (quoting *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007)). "[A] substantial burden is one that 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 482 (alterations omitted) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981)). Thus, whether a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment. *See Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *12 (S.D.N.Y. Sept. 3, 2013), *adopted by* 2014 WL 2767201 (S.D.N.Y. June 17, 2014). "Where a plaintiff adduces evidence sufficient to show that the government practice substantially burdens [his or] her religious exercise, the onus shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest." *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (citing 42 U.S.C. § 2000cc–2(b)).

Here, Plaintiff's free exercise claim fails at the initial inquiry, i.e., whether "the disputed conduct substantially burdened his sincerely held religious beliefs." *Chaboty*, 2015 WL 1439348, at *9 (citation, alterations and quotation marks omitted). Generally, "the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all." *Wallace v. Jaffree*, 472 U.S. 38, 53 (1985); *see also Hatzfeld v.*

*Eagen*, No. 08-CV-283, 2010 WL 5579883, at * 6 (S.D.N.Y. Dec. 10, 2010) (noting, in a pro se prisoner-plaintiff case, that "[a]theists are protected by the First Amendment" (citations omitted)), *adopted by* 2011 WL 124535 (N.D.N.Y. Jan. 14, 2011). Accordingly, it is plausible, that Plaintiff, even as a self-described non-religious individual, may have some free exercise rights that allow him the freedom not to subscribe to any religion.

However, based on the SAC and the exhibits attached therein, Plaintiff has failed to plausibly allege that any such rights were substantially burdened. Even assuming that, on July 13, 2018, Hickson misstated the DOCCS policy regarding protective headgear for dreadlocks, implying that only religious hair coverings would be allowed, (*see* SAC ¶ 15), Capra's decision later made clear that *any* approved "fastening device" would suffice to tie back Plaintiff's hair and listed multiple secular options that Plaintiff could have used, including a barrette or rubber band, (Grievances 17). Plaintiff makes no allegations that he even attempted to obtain these secular substitutes or a secular hair covering, that he was prevented from doing so, or that he was later informed that only religious hair coverings would suffice. (*See generally* SAC.) Indeed, the DOCCS directive that Capra cites in his decision, Directive 4914, makes no reference to requiring a religious head covering for dreadlocks; it states that inmates wearing "below shoulder length dreadlocks must tie them back in a ponytail with a barrette, rubber band, or other fastening device approved by the [s]uperintendent" and only mentions that inmates *may* wear dreadlocks in "an approved religious head covering," not that inmates with dreadlocks *must* use religious head coverings. (*See* DOCCS Directive No. 4914 at 5.)[5] Plaintiff makes no particular

---

[5] The Court may take judicial notice of the content of DOCCS Directive 4914, especially because Plaintiff relied on it heavily throughout the SAC. *See Brown v. Griffin*, No. 18-CV-5439, 2019 WL 4688641, at *1 n.1 (S.D.N.Y. Sept. 25, 2019) (taking judicial notice of a DOCCS directive that was referred to throughout the complaint) (collecting cases).

allegations as to why the hair ties recommended by Capra and by Directive 4914 would substantially burden Plaintiff's atheistic beliefs or why a secular head wrap would be necessary to practice Plaintiff's atheism. Accordingly, Plaintiff's claims under the Free Exercise Clause are dismissed.[6] *See Thomas v. Delaney*, No. 17-CV-1023, 2019 WL 4247807, at \*13–14 (N.D.N.Y. Aug. 13, 2019) (holding that claims that the defendants forced the plaintiff to choose between removing his braids and being "subjected to disciplinary punishment" survived a motion to dismiss, but that claims where the plaintiff experienced "inconvenience[s]" such as the temporary loss of his identification card did not), *adopted by* 2019 WL 4242268 (N.D.N.Y. Sept. 6, 2019); *Bryant v. Miller*, No. 18-CV-494, 2019 WL 5273210, at \*7 (N.D.N.Y. June 18, 2019) (dismissing Plaintiff's similar claims against defendants at a different correctional facility because Plaintiff had "not demonstrated that his desire to wrap his hair atop his head with a head covering is connected to his atheistic beliefs"), *adopted by* 2019 WL 4267376 (N.D.N.Y. Sept. 10, 2019), *appeal filed*.[7]

---

[6] To the extent Plaintiff seeks to claim that Hickson's alleged misstatement of the dreadlocks policy constituted a violation of Plaintiff's free exercise rights, such a claim also is dismissed. Other than alleging that Hickson, one time, told Plaintiff he "couldn't have his hair up with nothing securing it unless it was a religious hair covering," (SAC ¶ 15), Plaintiff makes no allegations that even come close to suggesting that Hickson engaged in behavior that put "substantial pressure on [Plaintiff] to modify his behavior and to violate his beliefs." *Gilliam*, 2017 WL 476733, at \*4 (citation and quotation marks omitted). Furthermore, it is well established that claims that corrections staff "failed to follow prison regulations . . . are not cognizable under § 1983." *Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at \*6 (S.D.N.Y. Mar. 15, 2001); *see also A'gard v. Perez*, 919 F. Supp. 2d 394, 403 (S.D.N.Y. 2013) ("Any alleged violations of prison directives or regulations do not give rise to a federal claim . . . ." (citation and quotation marks omitted)).

[7] As noted above, *supra* note 3, this dismissal also encompasses any claims for injunctive relief under RLUIPA, as the RLUIPA inquiry also involves the first step of determining whether Plaintiff plausibly alleged a substantial burden on his sincerely held religious beliefs. *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 587 (S.D.N.Y. 2015) ("Whether or not a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment." (citations omitted) (collecting cases)).

### 3. First Amendment Establishment Clause Claim

"The Establishment Clause forbids 'excessive government entanglement with religion.'" *Rweyemamu v. Cote*, 520 F.3d 198, 208 (2d Cir. 2008) (quoting *Lemon v. Kurtzman,* 403 U.S. 602, 613 (1971)). The Supreme Court has repeatedly made clear that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman,* 505 U.S. 577, 587 (1992) (citation, alteration and quotation marks omitted). The "principle at the heart of the Establishment Clause" is that "government should not prefer one religion to another, or religion to irreligion." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,* 512 U.S. 687, 703 (1994) (citations omitted). In prisons, "a niche has necessarily been carved into the establishment clause to require the government to afford opportunities for worship." *Muhammad v. City of N.Y. Dep't of Corrs.*, 904 F. Supp. 161, 198 (S.D.N.Y. 1995) (citation and quotation marks omitted), *appeal dismissed*, 126 F.3d 119 (2d Cir. 1997). Therefore, in the prison context, "the [E]stablishment [C]lause has been interpreted in the light of the affirmative demands of the [F]ree [E]xercise [C]lause." *United States v. Kahane*, 396 F. Supp. 687, 698 (E.D.N.Y. 1975), *order aff'd as modified*, 527 F.2d 492 (2d Cir. 1975).

Plaintiff invokes essentially the same facts for the Establishment Clause claim as he did for his Free Exercise claim; accordingly, the Court construes his invocation of the Establishment Clause, (SAC ¶ 31), to mean that Plaintiff alleges that Defendants' actions in enforcing Directive 4914 improperly established a state religion.

This claim also fails. In the prison context, where prison policies "control[] practically every aspect of inmates' lives, accommodating the free exercise of the religion of choice by

inmates necessarily involves some involvement by the government with religion." *Cardew v. Bellnier*, No. 09-CV-775, 2010 WL 7139218, at *15 (N.D.N.Y. Dec. 9, 2010), *adopted by* 2011 WL 3328632 (N.D.N.Y. Aug. 2, 2011); *see also Rossi*, 2015 WL 769551, at *12 (noting that in the prison context, "*some* entanglement [between the government and religion] is necessary" (alteration in original) (citation and quotation marks omitted)). Here, Directive 4914 seeks to accommodate those religions which may require the maintenance of dreadlocks and/or wearing a religious head covering over those dreadlocks. Notably, nothing in that accommodation refers to any particular religion or seeks to bar non-religious inmates from using a head covering. Nor has Plaintiff made any allegation that he has sought to obtain approval for a secular head covering and been denied due to his non-religious status. Indeed, Directive 4914 specifies that inmates with dreadlocks—religious or not—should tie them back with *any* "fastening device[s]" that are approved by a superintendent. (*See* DOCCS Directive 4914 at 5.) Directive 4914's attempt to accommodate religions that require head covers does not violate the Establishment Clause, and accordingly, any such claims are dismissed. *See Rossi*, 2015 WL 769551, at *12 (holding that DOCCS' attempt to accommodate "holy day menus" does not have "the primary effect of either advancing or inhibiting religion"); *Cardew*, 2010 WL 7139218, at *15 (dismissing Establishment Clause claims where DOCCS provided special meals to religions with dietary restrictions because it fell within the "niche" where the government's free exercise obligations necessitated "some involvement . . . with religion").[8]

_____

[8] As for the argument that Directive 4914 fails to address Plaintiff's preference of wearing his dreadlocks up without the recommended ties or a head covering at all, as discussed with regard to Plaintiff's First Amendment Claim, Plaintiff provides no particular allegations as to how Defendants' alleged failure to accommodate his preference substantially burdens his atheist practices. This analysis is fatal to such an argument because since Plaintiff "alleges no facts beyond the ones that form the basis of his Free Exercise claim for any claim under the

4.  Equal Protection Claim

Plaintiff alleges that he, as a "non-religious inmate," is unable to protect his hair "unless he partake[s] in religious practices," (SAC ¶ 33), and then cites the Equal Protection Clause, which the Court liberally interprets to mean that Plaintiff alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "[T]o assert an equal protection claim, a plaintiff must plead (1) adverse treatment 'compared with similarly situated individuals,' and (2) 'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2015 WL 783378, at *9 (S.D.N.Y. Feb. 23, 2015) (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)).  This requires a showing of "discriminatory intent or purpose." *Vill. of Arlington Heights v. Met. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (holding that a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" (citation omitted)); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (holding that a plaintiff "must prove purposeful discrimination, directed at an identifiable or suspect class" (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988))).

---

Establishment Clause," it is "properly anchored in the Free Exercise Clause." *Brown*, 2019 WL 4688641, at *7 n.4 (quoting *Jackson v. Mann*, 196 F.3d 316, 321 (2d Cir. 1999)).

Where there is no allegation of membership in a protected class, the plaintiff may still prevail on either a "class of one" or "selective enforcement" theory. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013). A "class-of-one" claim requires the plaintiff allege that he was "[1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). That is, "the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (citation and quotation marks omitted). A class-of-one plaintiff must show "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]." *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation and quotation marks omitted); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (noting that a class-of-one plaintiff "must identify comparators whom a prudent person would think were roughly equivalent," although he "need not show an exact correlation between [himself] and the comparators" (citation and quotation marks omitted)).

A "selective enforcement" claim requires the plaintiff to show both (1) that "he, compared with others similarly situated, was selectively treated," and (2) that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff." *Vaher*, 916 F. Supp. 2d at 433

(citation, quotation marks, and alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  Although "there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an equal protection claim under this theory," with "some courts evaluat[ing] whether a comparator is similarly situated under the same standard used in 'class of one' equal protection claims" and other courts "apply[ing] a less demanding standard to selective enforcement claims," *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 7 (S.D.N.Y. 2017) (citations omitted) (collecting cases), *aff'd*, 705 F. App'x 50 (2d Cir. 2017), it is clear that, at a minimum, some showing of comparison with others similarly situated is required.

Here, Plaintiff's Equal Protection Claim is "subject to dismissal, because it is both derivative and duplicative of [P]laintiff's claim that [D]efendants violated his First Amendment right to freely exercise his [lack of] religion." *Barnes v. Fidele*, 760 F. Supp. 2d 296, 302 (W.D.N.Y. 2011).  Plaintiff "has no freestanding right to wear" a protective covering for dreadlocks, "separate from any First Amendment right that he may have in that regard." *Id*. Because Plaintiff is non-religious and cannot articulate any atheistic principle requiring him to wear a covering for his dreadlocks, and because the SAC does not articulate any other form of protected class within which Plaintiff might fall, Plaintiff cannot articulate an Equal Protection claim.  "[T]he fact that *other* inmates . . . have been allowed to wear [head coverings] for *religious* reasons does not [alone] give rise to an [E]qual [P]rotection [C]laim, since [P]laintiff and those other inmates would not be similarly situated." *Id*. (emphasis added).  Indeed, Plaintiff offers no example of a similarly-situated comparator at all, which is required for both class-of-one and selective enforcement theories of Equal Protection violations.

Moreover, nothing in Plaintiff's allegations comes close to suggesting that either Defendant engaged in "intentional or purposeful discrimination." *Lopez*, 136 F. Supp. 3d at 591 (citation and quotation marks omitted). Nothing in either Defendant's actions or words was indicative of animus. At best, Plaintiff alleges that Defendants misread or misapplied Directive 4914, but the law is clear that, even under a "class of one" theory of Equal Protection, a plaintiff must plausibly allege circumstances of a difference in treatment that is "sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Shtilman v. Makram*, No. 14-CV-6589, 2018 WL 3745670, at *8 (S.D.N.Y. Aug. 6, 2018) (citation and quotation marks omitted). Accordingly, to the extent Plaintiff raised an Equal Protection claim, it is dismissed. *See id.* (dismissing Equal Protection claim where the plaintiff, a transgender prison inmate, failed to allege that she was a member of a protected class and, even under a class of one theory, failed to sufficiently allege that she was denied similar treatment "*due to* her gender-identity" and that "there was no rational basis for the officers' conduct" (emphasis added)); *see also Washington v. Afify*, 968 F. Supp. 2d 532, 540–41 (N.D.N.Y. 2013) (dismissing Equal Protection claim where the plaintiff failed to plausibly allege "that he was treated differently based on any protected characteristic" and where the facts were "more properly addressed" under a separate, First Amendment retaliation claim.)

### 5. Eighth Amendment Claim

Plaintiff alleges that his inability to exercise as a result of his purported inability to properly bind his dreads constitutes a violation of his Eighth Amendment right to "adequate medical [and] mental health treatment" and his "[c]onditions of [c]onfinement" rights. (SAC ¶ 34.) The Court liberally construes this to allege Eighth Amendment violations on the theories of deliberate indifference to his medical needs and unconstitutional conditions of confinement.

18

<u>a. Deliberate Indifference</u>

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

The first element is "objective" and requires the plaintiff to show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, the plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279–80 (citations omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive

list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element, which goes to mental state, requires the plaintiff to show that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen*, 746 F.3d at 63 ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citation and quotation marks omitted). An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Neither does "mere disagreement over the proper treatment . . . create a constitutional claim"; "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Here, Plaintiff fails to meet the requisite objective element of his claim, i.e., whether the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). Plaintiff alleges that he has been denied the ability to exercise in the yard, leading to a number of purported physical injuries, such as "muscle atrophy, fatigue, loss of appetite," and "sciatic never [sic] damage to his back, knees, shoulder, wrist, and fingers," along with mental health consequences, such as "anxiety, impulsivity, depression, suicidal ideations[,] and other harmful thoughts." (SAC ¶ 34.) According to Plaintiff, these symptoms all stem from a number of mental and behavioral issues, including anti-social personality disorder, intermittent explosive disorder, and "impulsivity," (*id*. ¶ 24), and exercising in the yard had helped to temper those symptoms, (*id*. ¶ 27). By limiting access to exercise due to Plaintiff's lack of proper binding for his dreads, according to Plaintiff, Defendants have exhibited "deliberate indifference" to Plaintiffs' condition. (*Id*. ¶ 28.)

To begin, Plaintiff has made no allegation, other than the July 13, 2018 incident, where Hickson approached Plaintiff and told him "he couldn't have his hair up with nothing securing it," (*id*. ¶ 15), that he has been banned from the exercise yard. Indeed, it is not clearly alleged that, on July 13, 2018, Hickson even ordered Plaintiff to leave the yard. (*See id*.) Moreover, even assuming that he was barred from the exercise yard, the alleged injuries—physical discomfort and mental anxiety and depression—fail to meet the requisite objective standard for a "sufficiently serious" injury, which is one that requires "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Green v. Phillips*, No. 04-CV-10202, 2006 WL 846272, at *4 (S.D.N.Y. Mar. 31, 2006) (quotation marks omitted) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Such injuries are not alleged here, and indeed, injuries

of an equal—or far more severe—caliber have been dismissed for failure to meet the objective standard of "sufficiently serious." *See Barrett v. Livingston County, N.Y.*, No. 14-CV-6593, 2019 WL 1083027, at *6 (W.D.N.Y. Mar. 7, 2019) ("Many courts have found certain common knee injuries insufficient to trigger Eighth Amendment protection, including meniscal tears, ruptured ACLs, and degenerative arthritis." (citation and quotation marks omitted) (collecting cases)); *West v. Brickman*, No. 07-CV-7260, 2009 WL 77866, at *1–4 (S.D.N.Y. Jan. 8, 2009) (dismissing Eighth Amendment claim because allegations that the plaintiff experienced "enormous swelling in her foot, severe headaches, anxiety attacks, severe depression, weight loss[,] and mood swings" did not present a "condition of urgency . . . that might produce death, degeneration, or extreme pain" (citation, alteration and quotation marks omitted) (collecting cases)).

Furthermore, it is also true that for Defendants to be held liable for deliberate indifference to medical needs, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hathaway*, 37 F.3d at 66 (citation and quotation marks omitted). Assuming arguendo that either Defendant actually banned Plaintiff from the exercise yard, nowhere does Plaintiff allege that either Defendant knew about his purported behavioral or mental disorders and knew that depriving Plaintiff of access to the exercise yard would trigger such consequences. Because Plaintiff "must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials," this gap in Plaintiff's allegations is also fatal to such a claim, even if Plaintiff had suffered a sufficiently serious injury. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citation and quotation

marks omitted).  Accordingly, any Eighth Amendment claim based on medical indifference is dismissed.

### b.  Conditions of Confinement

Beyond adequate medical treatment, as part of the Eighth Amendment prohibition on "cruel and unusual punishments," U.S. Const. amend. VIII, inmates have the right to conditions of confinement generally that do not "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, inmates do not have a right to "comfortable" prison conditions.  *Id.* at 349.  "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety."  *Walker*, 717 F.3d at 125 (alterations and quotation marks omitted).  "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Id.; see also Seymore v. Dep't of Corr. Servs.,* No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that '[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement claim.'" (alteration in original) (citation omitted)).  To meet the subjective element, a plaintiff must show that the defendant "acted with more than mere negligence," and instead knew of and disregarded an "excessive risk to inmate health or safety."  *Walker,* 717 F.3d at 125 (quotation marks omitted). Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive

inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta,* 539 U.S. 126, 137 (2003).

Plaintiff alleges all the same facts in support of a conditions of confinement claim. (SAC ¶ 34.) Again, it is not clear that Plaintiff has actually been prevented from exercising in the exercise yard or from obtaining proper ties or coverings that would facilitate his ability to play in the exercise yard. Although Plaintiff alleges, since the July 13, 2018 incident, he "has not entered the yard" and conclusorily states that "if he had, he could not practice his non-religious beliefs, nor exercise," nothing in the SAC plausibly alleges that Plaintiff was restricted by Defendants from exercising or that Plaintiff was denied access to appropriate hair ties or covers by Defendants, thereby effectively denying access to the exercise yard. (*Id.*) In short, it is not apparent that, even based on a liberal interpretation of the SAC, Plaintiff's lack of access to the exercise yard occurred through anything other than his own inaction. *See Lewis v. Zon*, 920 F. Supp. 2d 379, 389 (W.D.N.Y. 2013) (noting that the plaintiff's "voluntary" engagement in a hunger strike "undercuts his claim of deliberate indifference" (citation omitted)).

Even assuming that Defendants restrained Plaintiff from the exercise yard for failure to secure his hair, such a restriction does not constitute a harm that could be considered objectively sufficiently serious such that "he was denied the minimal civilized measure of life's necessities." *Walker*, 717 F.3d at 125 (quotation marks omitted). Claims involving "alleged denial of outdoor exercise and recreation" often "fall short of the Eighth Amendment standard" for a conditions of confinement claim. *Crichlow v. Fischer*, No. 17-CV-194, 2017 WL 6466556, at *15 (N.D.N.Y. Sept. 5, 2017) (collecting cases), *adopted by* 2017 WL 6459512 (N.D.N.Y. Dec. 18, 2017), *appeal dismissed*, 2018 WL 3491627 (2d Cir. Mar. 8, 2018). Moreover, similar to the flaw in Plaintiff's medical indifference claim, Plaintiff also fails to allege any facts to support the

subjective element of the claim, i.e., that Defendants knew of and "disregard[ed] an excessive risk to inmate safety" by instructing Plaintiff that he should tie his dreadlocks up when he wanted to engage in recreational activity in the exercise yard. *Ruggiero v. Prack*, 168 F. Supp. 3d 495, 518 (W.D.N.Y. 2016) (citation and quotation marks omitted). Plaintiff makes no allegations that Defendants knew of his medical conditions, knew of the impact of lack of exercise to his medical and physical health, or even that Defendants knew that Plaintiff "ha[d] not entered into the yard" since the July 13, 2018 incident. (SAC ¶ 34.) Accordingly, any Eighth Amendment claim based on a conditions of confinement theory is also dismissed.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted. To the extent Plaintiff seeks damages under RLUIPA or against Defendants in their official capacities, such claims are dismissed with prejudice.

Because this is the first adjudication of Plaintiff's claims on the merits before this Court, all other claims are dismissed without prejudice, and the Court provides Plaintiff with 30 days to file a third amended complaint. Plaintiff should include within that third amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to consider. Plaintiff is advised that the third amended complaint will replace, not supplement, the SAC. The third amended complaint must contain *all* of the claims, defendants, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, the claims may be dismissed with prejudice.[9]

---

[9] Because the Court decides the Motion on the merits of Plaintiff's claims in the SAC, it does not reach the arguments raised by Defendants regarding personal involvement or qualified immunity at this time.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No.

35.)

SO ORDERED.

DATED: January 3O, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE