UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS BRYANT,

                                    Plaintiff,                              No. 18-CV-10198 (KMK)

                        v.                                                  OPINION & ORDER

MICHAEL CAPRA, *Superintendent*; MS. HICKSON,

                                    Defendants.

Appearances:

Thomas Bryant
Ossining, NY
*Pro Se Plaintiff*

Jonathan James Wilson, Esq.
Maria Barous Hartofilis, Esq.
New York State Office of The Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Thomas Bryant ("Plaintiff"), currently an inmate at Sing Sing Correctional Facility

("Sing Sing"), brings this pro se Action, pursuant to 42 U.S.C. § 1983 and the Religious Land

Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq.*, against

Michael Capra ("Capra") and Ms. Hickson ("Hickson") (collectively, "Defendants"), alleging

that Defendants violated Plaintiff's constitutional rights when they purportedly prohibited

Plaintiff from wearing his dreadlocks up with nothing securing them while in the prison yard.

(*See* Third Am. Compl. ("TAC") (Dkt. No. 54).)  Before the Court is Defendants' Motion To

Dismiss the TAC (the "Motion").  (*See* Not. of Mot. (Dkt. No. 65).)  For following reasons, the

Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's TAC and exhibits, (TAC), and from Plaintiff's Opposition and Sur-Reply briefs, (Mem. of Law in Supp. of Pl.'s Opp'n ("Pl.'s Mem") (Dkt. No. 69); Sur-Reply Mem. of Law. in Supp. of Pl.'s Opp'n ("Pl.'s Sur-Reply") (Dkt. No. 72)).[1]  They are assumed true for purposes of resolving the instant Motion.

At all relevant times, Plaintiff was incarcerated at Sing Sing.  (TAC 1).[2]  Plaintiff is an atheist whose beliefs are sincerely held; "his practices are centered on remaining free from religious beliefs and practices."  (*Id.* at 2.)  Plaintiff has floor-length dreadlocks, which he has been growing for 25 years.  (*Id.*)

On June 13, 2018, while Plaintiff was playing basketball at Sing Sing, Hickson approached him and said that he could not "have his hair up with nothing securing it unless it was with a religious hair covering."  (*Id.* (alteration omitted).)  Plaintiff construed this as an order presenting him with a choice: either (1) "take his dreadlocks out [of] the wrapped fashion he had secured them in," or (2) "if he wanted to wear them like that[,] [they] had to have a religious hair covering," such as a Rastafarian crown or tsalot-kob.  (*Id.* at 2–3.)  According to Plaintiff, this order was limited to the prison yard, as Plaintiff continues to wear his dreadlocks in a wrapped fashion "when moving throughout the facility," including while assisting at a TED X event with several prominent guests in attendance.  (*Id.* 5–6; Pl.'s Mem. 9.)  Pursuant to New

---

[1] "[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [P]laintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987)).

[2] In referencing the TAC and its exhibits, the Court refers to the ECF-generated page number in the upper right-hand corner.

York Department of Corrections and Community Supervision ("DOCCS") institutional rule 106.10, this was an "order[] of [d]epartmental personnel," which Plaintiff was required to "obey . . . promptly and without argument." (TAC 3, 15.) Plaintiff alleges that this order violated DOCCS Directive 4202, which prohibits imposing burdens on the ability of prisoners to worship as they please, (*id.* at 3, 18), and was issued pursuant to an "unwritten provision" that Plaintiff may wear his dreadlocks up only if he wears a religious hair covering, (*id.* at 7).

The same day, Plaintiff wrote a grievance, requesting "an exemption from Hickson's order that would enable him to wrap his dreadlocks up without a religious hair covering while in the yard." (*Id.* at 3.) This grievance alerted Hickson that "her actions were detrimental to [P]laintiff's well[-]being." (Pl.'s Mem. 15.) Non-party Q. Quick, the Inmate Grievance Supervisor, investigated Plaintiff's grievance. (TAC 3.) On July 10, 2018, the Inmate Grievance Resolution Committee ("IRGC") decided, consistent with DOCCS Directive 4914, that "[i]nmates wearing below shoulder length dreadlocks must tie them back in a pony tail with barrette, rubber band, or other fastening device approved by the Superintendent." (*Id.*; *see also id.* at 23.) The IRGC did not otherwise address Hickson's order. (*Id.* at 23.) Plaintiff appealed the IRGC decision to Capra, and Capra "rubberstamped [the] IRGC's decision." (*Id.* at 3–4; *see also id.* at 25.) Plaintiff unsuccessfully appealed the IRGC's and Capra's decisions to the Central Office Review Committee ("CORC"). (*Id.* at 4; *see also id.* at 26.)

Because his dreadlocks are "too long for a ponytail," the hair ties approved pursuant to Directive 4914 would not prevent Plaintiff's hair from touching the ground. (Pl.'s Mem. 3.) Deprived by Hickson's and Capra's orders of a clean and hygienic manner consistent with his atheistic beliefs to protect his long hair, Plaintiff has not gone outside to the yard for exercise, fresh air, or recreation for "26 months and counting." (Pl.'s Sur-Reply 4; *see also* TAC 5, 7.)

3

This has caused Plaintiff "to suffer serious physical (a substantial amount of weight loss, aches and pains to his joints, fatigue, and muscle . . . atrophy), mental (suicidal ideation, mood swings, stress, and depression), and emotional injuries (sadness and frustration)."  (TAC 5; *see also id.* at 6–7.)  In addition, Plaintiff suffers from pre-existing injuries and severe mental and personality disorders, and exercise and recreational activities are recommended as part of his treatment plan. (Pl.'s Mem. 16.)  It is unsafe for Plaintiff to exercise in his cell because it is small, poorly ventilated, and contains a variety of furnishings fixed to the wall and floor.  (*Id.* at 16–17.) Further, Plaintiff does not have access to a gym.  (TAC 9; *see also* Pl.'s Mem. at 17.)

Plaintiff alleges that Hickson's and Capra's enforcement of the unwritten exemption for religious hair coverings violates the Free Exercise and Establishment Clauses of the First Amendment to the U.S. Constitution, and burdens his ability to worship as he pleases in violation of RLUIPA.  (TAC 7–8.)  He alleges that the same violates the Equal Protection Clause, because it treats religious inmates with dreadlocks differently from non-religious inmates with dreadlocks.  (*Id.* at 8.)  Finally, Plaintiff alleges that his inability to exercise and resulting injuries violate his Eighth Amendment right to be free from cruel and unusual punishment.  (*Id.* at 6–7.)

Plaintiff seeks declaratory judgment that Defendants' acts are unconstitutional, an injunction permitting him to wear his hair wrapped up in the yard with no religious covering, and $20,000 in compensatory damages and $20,000 in punitive damages against each Defendant pursuant to 41 U.S.C. § 1983.  (*Id.* at 8–9.)

B.  Procedural Background

Because the Court discussed the procedural background in its previous Opinion and Order (the "January Opinion"), (*see* Op. & Order ("Jan. Op.") 4–5 (Dkt. No. 49)), the Court describes the procedural history of this case beginning with the January Opinion.  On January 30,

2020, the Court issued an Opinion & Order dismissing Plaintiff's SAC without prejudice.  (*See* Jan. Op. 25; *see also* Am. Compl. ("SAC") (Dkt. No. 33-1).)  Plaintiff was given 30 days to file a third amended complaint.  (Jan Op. 25.)  Because the January Opinion was inadvertently not mailed to Plaintiff, the Court on March 3, 2020 issued an Order (1) directing the Clerk of Court to mail the January Opinion to Plaintiff, and (2) providing Plaintiff until April 3, 2020 to file a third amended complaint.  (Dkt. No. 50.)  In a letter dated March 25, 2020, Plaintiff acknowledged receipt of the Court's March 3 Order, stated that he still had not received the January Opinion, and requested an extension of time to file a third amended complaint.  (Dkt. No. 51.)  On March 31, 2020, the Court granted Plaintiff's request, (Dkt. No. 53), and Plaintiff's TAC was dated April 30, 2020 and filed on May 18, 2020, (TAC).  On June 1, 2020, Defendants wrote a letter requesting a briefing schedule for a motion to dismiss.  (Dkt. No. 55.)  On June 12, 2020, the Court ordered a briefing schedule.  (Dkt. No. 56.)  On July 17, 2020, Defendants submitted their Motion To Dismiss.  (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 66).)  Plaintiff's opposition papers were dated August 25, 2020 and filed on August 31, 2020.  (Pl.'s Mem.; *see also* Dkt. No. 68.)  On September 14, 2020, Defendants submitted a reply.  (Reply Mem. of Law in Further Supp. of Defs.' Mot. ("Defs.' Reply") (Dkt. No. 70).)  Plaintiff's sur-reply was dated September 24, 2020 and filed on September 29, 2020.  (Pl.'s Sur-Reply.)

## II.  Discussion

Defendants argue that Plaintiff has not alleged their personal involvement, (Defs.' Mem. 6–8), that Plaintiff has not alleged a First Amendment claim, (*id*. at 8–13), that Plaintiff has not alleged an Equal Protection claim, (*id*. at 13–14), that Plaintiff has not alleged an Eighth Amendment claim, (*id*. at 14 – 17), that Defendants are entitled to qualified immunity, (*id*. at 17–

19), and that Plaintiff's claims should be dismissed with prejudice, (*id*. at 19).  The Court addresses each argument to the extent necessary.

    A.  Standard of Review

    The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint."  *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff['] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," C*hambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "his opposition memorandum," *Gadson*, 1997 WL 714878, at *1 n.2.

7

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  Analysis

Plaintiff's TAC fails to address many of the deficiencies identified in the January Opinion.[3]  For example, with respect to his RLUIPA and Free Exercise Clause claims, the Court concluded that Plaintiff "failed to plausibly allege that any [free exercise] rights were substantially burdened."  (Jan. Op. 11.)  This was in part because Plaintiff had "not demonstrated that his desire to wrap his hair atop his head . . . is connected to his atheistic beliefs."  (*Id*. at 12 (quoting *Bryant v. Miller*, No. 18-CV-494, 2019 WL 5273210, at *7 (N.D.N.Y. June 18, 2019), *adopted by* 2019 WL 4267376 (N.D.N.Y. Sept. 10, 2019), *appeal dismissed* 2020 WL 1545856 (2d Cir. Feb. 26, 2020)).)  Here, in his TAC and opposition papers, Plaintiff still does not allege that wearing his hair up with no hair covering or a non-religious hair covering is part of his

---

[3] The TAC does remedy some of the deficiencies identified in the January Opinion.  For example, regarding the Establishment Clause claim, in the SAC Plaintiff did not allege that he had "sought to obtain approval for a secular head covering and been denied due to his non-religious status."  (Jan. Op. 14.)  In the TAC, by contrast, Plaintiff alleges that he "petitioned CORC to . . . allow him to . . . wear a non-religious hair covering, or to wear his dreadlocks up without any covering, but was denied."  (TAC 7.)

practice of atheism.[4]  (*See generally* TAC.)  With respect to his Establishment Clause claim, the Court found that "Directive 4914's attempt to accommodate religions that require head covers does not violate the Establishment Clause," (Jan. Op. 14), and that Plaintiff's claim is "properly anchored in the Free Exercise Clause," (*id*. at 15 (quoting *Brown v. Griffin*, No. 18-CV-5439, 2019 WL 4688641, at *7 n.4 (S.D.N.Y. Sept. 25, 2019))).  Plaintiff's TAC and opposition papers contain no new allegations that change this conclusion.  The Court found the SAC Equal Protection claim "derivative and duplicative" of Plaintiff's First Amendment claim, and held that Plaintiff is not "similarly situated" to inmates that cover their dreadlocks for religious reasons. (Jan. Op. 17 (citing *Barnes v. Fidele*, 760 F. Supp. 2d 296, 302 (W.D.N.Y. 2011)).)  The TAC is subject to dismissal for the same reasons.  Finally, with respect to his Eighth Amendment claim, the Court found no allegation that "Plaintiff's lack of access to the exercise yard occurred through anything other than his own inaction."  (*Id*. at 24.)  Here, because he has not alleged a

---

[4] While Plaintiff does allege that the allowable alternatives are impracticable due to the length of his dreadlocks, (*see* Pl.'s Mem. 3), he does not allege that floor-length dreadlocks are part of his practice of atheism.  The absence of any alleged religious basis for Plaintiff's dreadlocks distinguishes this case from *Amaker v. Goord*, where the court found that requiring an inmate to either cut his hair or forgo his religious affiliation substantially burdened his religious practice.  No. 06-CV-490, 2007 WL 4560596, at *6 (W.D.N.Y. Mar. 9, 2007), *report and recommendation adopted*, 2007 WL 4560595 (W.D.N.Y. Dec. 18, 2007).  In contrast to the instant case, in *Amaker* the plaintiff alleged that he "sincerely believe[d] that he should wear dreadlocks as part of his religious practice."  *Id*.  Here, even if prison regulations allow inmates "to grow their dreadlocks to any length desired," (Pl.'s Sur-Reply 6), the Constitution does not— in the absence of a religious justification—guarantee Plaintiff a similar right, *see Cowart v. McGinnis*, No. 02-CV-817, 2007 WL 4030000, at *8 (W.D.N.Y. Nov. 15, 2007) (finding that the plaintiff had no protected liberty interest in "wearing his hair in a particular style"); *cf. Pilgrim v. Artus*, No. 07-CV-1001, 2010 WL 3724883, at *17 (N.D.N.Y. Mar. 18, 2010) (finding in the qualified immunity context that "neither the Supreme Court nor the Second Circuit has ruled that . . . non-Rastafarian inmates are . . . entitled to" First Amendment protection for dreadlocks (emphasis omitted)), *report and recommendation adopted*, 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010).  Thus, Plaintiff fails to allege an injury to his constitutional rights in challenging "the ambiguity/constitutionality of DOCCS hair policy," which allows dreadlocks of any length but does not allow "added protection for . . . dreadlocks when a ponytail will not suffice."  (TAC 7.)

constitutionally protected interest in floor-length dreadlocks, the Court similarly finds that it is Plaintiff's choice, and not the action or inaction of Defendants, which interferes with his "meaningful opportunity for physical exercise," *see McCray v. Lee*, 963 F.3d 110, 120 (2d Cir. 2020), causing Plaintiff's alleged medical problems.[5]

      "The mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations." *Weslowksi v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).  Because the factual claims in the TAC are materially identical to those in the SAC, "the law of the case doctrine counsels against reconsideration of the Court's . . . dismissal of the [Second Amended] Complaint."  *Id.* Accordingly, and as described above, Plaintiff's claims are dismissed for the same reasons they were dismissed in the January Opinion.  *See Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *4–5 (S.D.N.Y. Jan. 16, 2020) (applying the law-of-the-case doctrine to dismiss portions of a pro se complaint where the two pleadings at issue were "substantially identical"); *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016) (same); *Guttilla v. City of New York*, No. 14-CV-156, 2016 WL 1255737, at *3 (S.D.N.Y. Mar. 29, 2016) (same).[6]

---

[5] Consistent with the January Opinion, Plaintiff's claims that "corrections staff failed to follow prison regulations are not cognizable under § 1983."  (Jan. Op. 12 (citation, alteration and quotation marks omitted); *see* Pl.'s Mem. 19; and TAC 3, 18.)

[6] Because the Court decides the Motion on the merits of Plaintiff's claims in the SAC, it does not reach the arguments raised by Defendants regarding personal involvement or qualified immunity.

### III.  Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted.  Plaintiff's claims are dismissed *with* prejudice.  This is the second time adjudicating his claims, and Plaintiff has not fixed the problems identified by the Court in the January Opinion.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation, alterations and quotation marks omitted)).

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 65), to mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket, and to close this case.

SO ORDERED.

DATED:      January  31 , 2021
            White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE